REVENUE AND TAXATION
The language contained in the first sentence of Article X, Section 8 of the Oklahoma Constitution, as amended on November 7, 1972, preceding the word "except" has no practical meaning today; further, that in considering the entire Article X, Section 8 as amended in reference to real property that in determining its assessed value for ad valorem tax purposes, all such property must be evaluated for its highest and best use for which the property is actually used or was classified for use and that the fair cash value of that property for that use must be determined as if sold at a fair voluntary sale; further, that following the above procedure may result in the fair cash value for the highest and best use being synonymous with the fair cash value based solely on a fair voluntary sale when such property is in fact sold on the basis of its current use. In absence of legislative action, the responsibility to determine all classes rests with the Oklahoma Tax Commission pursuant to 68 O.S. 2403 [68-2403] (1971). The Attorney General is in receipt of your request for an opinion wherein you ask the following questions: "1. Construed with all subsequent language in Section Eight, does the language preceding the word 'except' in the first sentence have any practical, present-day meaning at all? "2. Does the first-sentence language following the word 'except' have any practical, present-day meaning with respect to the manner in which an assessor is to determine value of real property for assessment purposes, or does the second-sentence proviso completely overshadow and supersede the language of the second clause of the first sentence? In particular, does the proviso's call for a determination of real property's value for taxation on the basis of 'fair cash value for the highest and best use for which such property was actually used, or was previously classified for use' retain to any extent the thrust of the definitive language 'estimated at the price it would bring at a fair voluntary sale' when such language follows the words 'fair cash value', or is 'fair cash value for the highest and best use, etc.' a hypothetical value ('use value') to be determined on the basis of criteria untempered by any estimate of the price the property would bring at a fair voluntary sale, or of sure knowledge of what the property actually did bring at a fair voluntary sale? "3. Can 'fair cash value, estimated at the price real property would bring at a fair voluntary sale' and 'fair cash value for the real property's current actual highest and best use, or the highest and best use for which it was previously classified for use' ever be synonymous? If so, when? "4. With respect to the cited phraseology, '. . . or was previously classified for use . . .', who bears the responsibility for determining the use classification of property for purposes of taxation, in the absence of any obvious current, actual use? "5. If the value of real property for taxation purposes is a hypothetical value which is less than the value determined by an estimated (or actual) price established between a willing buyer and a willing seller in a 'fair voluntary sale' situation, where the current use of the property is to be continued and there is an absence of outside influences which could impute to the property a higher value for a potentially higher and better use, who is responsible for developing standards, procedures, and methodologies for the assessor's use in uniformly arriving at such lesser value? Put another way, if an assessor, in making his full-value appraisals of property, is to base his appraisals on what investors should be paying for property for a given use, rather than on what investors actually are paying for the property for that use, who is to determine how to arrive at such a hypothetical value, and how?" Your questions all deal with the construction of the Oklahoma Constitution, Article X, Section 8 as amended on November 7, 1972. This section states as follows: "All property which may be taxed ad valorem shall be assessed for taxation at its fair value, estimated at the price it would bring at a fair voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale. Provided, however, that no real property shall be assessed for ad valorem taxation at a value greater than thirty-five percent (35%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. Provided, further, that the transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property. In connection with the foregoing, the Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this state. Any officer or other person authorized to assess values or subjects for taxation, who shall commit any wilful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office and be otherwise punished as may be provided by law." Your first question asks whether or not the language preceding the word "except" in the first sentence has any practical present-day meaning. This language by itself would require all property subject to ad valorem to be assessed at one hundred percent (100%) of its fair cash value and as you correctly point out, intangible personal property is no longer taxed by reason of the adoption of the new Article X, Section 6A. Therefore, since tangible personal property and real property are dealt with in Article X, Section 8 following this language, the first portion of Section 8 about which you inquire does not have any present-day meaning. Your next question deals exclusively with real property and you are concerned about the language within Article X, Section 8 which requires real property to be assessed for taxation at not more than thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair and voluntary sale, together with the language immediately following which provides that no real property shall be assessed for ad valorem taxation at a value greater than thirty-five percent (35%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. These two portions of Article X, Section 8 must be construed together in order to arrive at the intent of this amendment. The first part requiring the limitation of thirty-five percent (35%) of fair cash value based on a voluntary sale was previously contained within Section 8 and the second part discussing the highest and best use in relation to the fair cash value was added by the 1972 amendment It would seem, therefore, that real property is to be assessed at not more than thirty-five percent (35%) of its fair cash value and that value is to be determined by the highest and best use in accordance with those provisions and the provision for a fair voluntary sale. That is, the highest and best use for which the property was actually used or was classified for use and for which it could be sold at a fair voluntary sale for that use must be determined for each piece of real property taxed. Prior to the 1972 amendment real property's fair cash value was to be determined by the price it would bring at a fair voluntary sale regardless of the use to which the property was being put. The procedure is not changed except that the fair voluntary sale determination must be made on condition that such a sale between a willing buyer and a willing seller neither compelled to sell or to buy is to be limited to the use to which the property was classified. In your third question you ask whether the fair cash value based on a fair voluntary sale and the fair cash value for real property's current highest and best use or the highest and best use for which it was previously classified could ever be synonymous. The two values may indeed be the same, although the procedure to estimate a sale price based upon its actual use might differ from the price that was actually paid or might be paid for a given piece of real property because of a purchase based on some potential use. Nevertheless, for example, if land which is being used for farm land was sold as a farm and used as a farm by the purchaser, then it would appear that it would be most likely that these terms would be synonymous and in accordance with the procedure outlined in answering Question No. 2. Your fourth question asks, in essence, whose responsibility is it to determine use classifications of property. Article X, Section 8 provides in part that the Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this State. As of this writing the Legislature has failed to act. Therefore, pursuant to previously granted legislative authority, the responsibility for establishing use classes rests with the Oklahoma Tax Commission. Title 68 O.S. 2403 [68-2403] (1971) provides in part as follows: "The Oklahoma Tax Commission shall have the authority and it shall be its duty to: "(a) Confer with and assist County Assessors and County Boards of Equalization in the performance of their duties, to the end that all assessments of property be made relative, just and uniform and that real property and tangible personal property may be assessed at not to exceed thirty-five percent (35%) of its fair cash value estimated at the price it would bring at a fair voluntary sale;" This responsibility would be for all use classifications regardless of whether the property had any "obvious current, actual use". It can be readily seen that for equalization of assessments statewide there must be uniformity in "use classes" in order to compare one county's assessment ratios with another according to the uses the properties may be employed. Otherwise there would be chaotic and non-uniform classes of use throughout the 77 counties. Your fifth question has been answered by the procedures and discussion outlined above and does not require separate commentary. It is, therefore, the opinion of the Attorney General that in reference to Article X, Section 8 of the Oklahoma Constitution, as amended on November 7, 1972, that the language contained therein in the first sentence preceding the word "except" has no practical meaning today; further, that in considering the entire Section 8 as amended in reference to real property that in determining its assessed value for ad valorem tax purposes, all such property must be evaluated for its highest and best use for which the property is actually used or was classified for use and that the fair cash value of that property for that use must be determined as if sold at a fair voluntary sale; further, that following the above procedure may result in the fair cash value for the highest and best use being synonymous with the fair cash value based solely on a fair voluntary sale when such property is in fact sold on the basis of its current use. In absence of legislative action, the responsibility to determine all use classes rests with the Oklahoma Tax Commission pursuant to 68 O.S. 2403 [68-2403] (1971). (JAMES H. GRAY) (ksg)